INSURANCE COMPANY OF NORTH
AMERICA, Appellant,

v.

Kay Frances DAVIS, Appellee.

No. 25347.

United States Court of Appeals
Fifth Circuit.

July 16, 1968.

Dermot S. McGlinchey, New Orleans, La., for appellant.

Dan A. Spencer, Shreveport, La., for appellee.

Before TUTTLE and SIMPSON, Circuit Judges, and BREWSTER, District Judge.

TUTTLE, Circuit Judge:

This was an action brought by appellee Kay Frances Davis to recover an amount asserted to be due under one of the provisions of an insurance policy issued by appellant Insurance Company of North America. The district court granted appellee's motion for summary judgment for the amount sued for, together with a penalty of twelve per cent plus reasonable attorneys fees under a Texas statute. The district court deferred the fixing of the amount of attorneys fees. Appellant appeals from this adverse judgment.

Mrs. Davis brought suit in her individual capacity and as natural tutrix of her minor children to recover the proceeds of an insurance policy allegedly due as a result of the death of her husband, Daniel Davis, who on October 20, 1966, was killed while a passenger in a helicopter owned and operated by Petroleum Helicopters, but chartered to Trunkline Gas Company. Appellant INA had in full force and effect an insurance policy issued to Trunkline and certain affiliated companies. The policy was mainly a liability policy insuring the named insureds against liability for personal injury or death arising out of the ownership, maintenance or use of the aircraft covered by the policy.

There is no issue that the policy in question covered the aircraft in which Davis was killed. The issue concerns Coverage D of the policy, which provided as follows:

"Coverage D—Admitted Liability and Weekly Indemnity. That the company's limit of liability under Coverage B for each person, as recorded in Condition #1 shall be offered in payment by the company, to the extent of the applicable limit of liability hereinafter indicated in the Schedule of Benefits, *in full settlement of any claim* because of bodily injury sustained by a passenger (as defined in the policy) carried in an insured aircraft *whether or not the insured is legally liable* in respect of such bodily injury claim, *provided* (a) bodily injury results in loss of life, dismemberment or disability as described in the Schedule of Benefits, and (b) the injured passenger, or *any persons claiming* by, through or under him, *shall first execute a full release for all claims for damages against the insured in the manner requested by the company*. The word 'passenger' shall include any employee of the insured, whether or not such injury is sustained while such employee is engaged in the employment of the insured. Where bodily injury is sustained by an employee while engaged in the employment of the insured, such employee, or any persons claiming by, through or under him, shall not be required to release the insured in respect of claims under any workmen's compensation law. In the event the injured passenger or any persons claiming by, through or under him, shall fail to accept in writing within thirty days from the date of offer, the voluntary payment offered under the declarations of this policy, the company will no longer be bound by the undertakings expressed in this coverage and this policy shall operate as though this coverage had never been issued." (Emphasis added.)

After preliminary negotiations, appellant INA, pursuant to provisions of Coverage D, sent a letter to appellee's attorney offering a payment of $100,000.-00 in return for a release to be signed by all persons claiming under Mr. Davis. Appellee refused to sign the requested release and meanwhile had filed suit for the amount. INA defended on the ground that it was entitled to demand a full release in return for the $100,000.00 payment. Both sides moved for summary judgment and the district court granted the appellee's motion and denied appellant's on the ground that the demanded release was too broad. The court held that to require such a release was in violation of the terms of the Coverage D of the policy and thus INA's refusal to

pay appellee the amount due under the policy because of her refusal to sign this release constituted an arbitrary and capricious refusal to pay: "To require the plaintiff to execute this release as a condition precedent to receiving the money due under Coverage D of the policy in question was an arbitrary and unreasonable requirement not called for by the terms of this policy.".

Appellant INA maintains that the district court erred and asserts that it was only asking for the full release as permitted by the terms of the insurance policy and that appellee was offering only a restricted release which would not afford the insured Trunkline the full protection of a full release. Appellant asserts that such release offered by appellee was a limited release or covenant not to sue which would not prevent other parties sued by appellee from impleading the insured for indemnity or contribution.

█ The judgment of the district court that INA was not entitled to its demanded form of release is correct. The terms of Coverage D require a "full release of all claims for damages *against the insured* (Trunkline and affiliates) in the manner required by the company." It is plain by the terms of the release demanded by INA that appellant was requiring much more than was authorized by the language of the contract as a condition precedent to payment. The demanded release in question provided in part that Mrs. Davis and her children

> "forever compromise, release, acquit and discharge *Insurance Company of North America,* Panhandle Eastern Pipeline Company, and Andarco Production Co., Century Refining Co., National Helium Corp., *and Trunkline Gas Company* from and *against any and all claims under said policy ANM 7 7140 and all claims for personal injury, property damage, medical expenses or any other claim whatsoever arising out of or any way relating to the death of Daniel W. Davis* which resulted from a helicopter crash on or about October 20, 1966 near Leland, Mississippi, *including but not limited to* those matters asserted in the action entitled Kay Frances Davis v. Insurance Company of North America, No. 117–222 of the docket of the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, and she does hereby authorize her counsel of record, Dan A. Spencer, Esq., to have the said suit dismissed with prejudice, each party to bear her of its own respective costs." (Emphasis added.)

It is interesting to note that appellees were known to INA at the time of the demanded release to have instituted a separate suit against Petroleum Helicopters, from whom Trunkline chartered the helicopter involved on the theory as evidenced by a letter written by appellee's counsel to INA's counsel, that Petroleum was liable because Trunkline's charter contract with Petroleum expressly provided for full control of the aircraft by employees of Petroleum. Thus, appellee refused to sign the release on the theory that to do so would amount to a complete release of all third parties even though they were not insured under the policy in question, and that such a release would release Petroleum who was not covered by the policy in question and against whom appellee believed she had a valid cause of action. The district court intelligently theorized why INA was interested in obtaining this kind of release. The claims manager of INA stated in his deposition that he was aware of the existence of an insurance policy of *INA insuring Petroleum.* Thus, INA would have considered it a direct benefit to obtain its own kind of "full release" which would release INA in addition to the named insureds and which would in its view protect it in other actions such as appellee's suit against Petroleum.

█ Affirming that part of the district court's judgment as to the sum of $100,000.00 due and owing to appellee, we find we must reverse that part of the judgment pertaining to the imposition of a twelve per cent penalty and reasonable attorneys fees under the Texas statute which imposes such a penalty when an

insurer fails to pay a loss due under an accident or life insurance policy within thirty days after demand, a penalty assessed no matter how justified the refusal to pay may have seemed, if, in fact, the insurer is ultimately found liable for the loss. Regardless of the resolution of the question as to whether this Texas penalty statute, Article 3.62 of the Insurance Code of Texas, V.A.T.S., is properly enforceable in a diversity suit in a Louisiana forum,[1] it seems clear that the district court erred in assessing the 12% penalty and reasonable attorneys fees on the facts of this case.

Appellee's counsel first made a formal demand for payment on November 12, 1966, received by INA on November 14, and counsel additionally stated "if you wish any documents in proof of this loss, please advise me within five days. Failing to hear from you, I will consider that you have accepted this letter as sufficient proof of loss in connection

---

**1.** The district court held that a federal court must apply the conflicts of law rule of the forum in a diversity case, and in Louisiana the conflicts rule was that the law of the place where the insurance policy was delivered must govern. The court found as a fact that the policy was delivered in Texas and that, therefore, Texas law would apply. The court then found that the penalty statute, Article 3.62 of the Insurance Code of Texas, would apply and that even though the policy in question was mainly a liability policy, Coverage D was in itself an accident policy such as to come within Article 3.62, since the payment of the amount was not conditioned upon the liability of the insured. The court found this provision similar to medical pay provisions of automobile liability policies which had previously often been held to be in the nature of an accident policy, and apart from the liability coverage of the policy.

Appellant concedes that under Louisiana law, the law of the place of delivery of an insurance policy applies as to construing its provisions, but asserts the applicability of a traditional viewpoint that penalties are governed by the law of the forum and that, even if Texas law controls, such penalty provisions cannot be enforced in a Texas forum, as foreign penalty provisions have no extra-territorial effect or enforcement rights. E. g. Consolidated Auto Warranty Corp. v. Bankers Fire and Marine Ins. Co., 183 F.Supp. 816 (N.D. Ala.1960) ; 15A C.J.S. Conflict of Laws § 4(6).

The question seems to be whether such traditional concepts are in fact applicable. First, there is the question whether the 12% penalty is a "penalty" in the conflicts of laws sense. The test that has gained some acceptance is formulated in these terms: whether the wrong sought to be redressed is a wrong to the public or a wrong to an individual, whether the main purpose of the statute is the infliction of punishment on the wrongdoer

or the giving of compensation for an injury sustained. 15A C.J.S. Conflict of Law § 4(6) at page 398 and cases cited therein ; Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123. This Texas penalty provision, along with attorneys fees, has been interpreted by the Supreme Court of Texas in Union Central Life Ins. Co. v. Chowning, 86 Tex. 654, 26 W. 982, 24 L.R.A. 504; 8 Tex.Civ. App. 455, 23 S.W. 117 (1894) and cited with approval in Fidelity Mutual Life Assn. v. Mettler, 185 U.S. 308, at page 325, 22 S.Ct. 662, at page 669, 46 L.Ed. 922 (1911) *as compensation to the individual rather than redress of wrong to the public*, as "damages for a failure to comply with the contract by payment, and the attorneys' fees were allowed as compensation for the cost of collecting the debt." The excess amount is not to be regarded as a penalty but as damages. Mutual Reserve Life Ins. Co. v. Jay, 109 S.W. 1116 at 1129, 50 Tex.Civ.App. 165 (1908) ; 3 Appleman, Insurance Law and Practice, Section 160 at page 330.

Moreover, such provisions automatically become a condition of each contract of insurance entered into within the state, Mutual Reserve, supra, such being a legitimate and valid exercise of the power of the state legislature to prescribe conditions upon which such companies are permitted to do business within the state. Merchants Life Assn. of United States v. Yoakum, 98 F. 251 (5 Cir., 1899); 3 Appleman, Sec. 1601, page 331, note 7. Under this view, the penalty provision is a condition of the contract as if it had been written into the contract by the parties themselves and thus it would appear that Texas Law, applicable in so construing the terms of the contract, as appellant had conceded, would be the choice of law also as to penalties and the penalty clause enforceable as any other clause of the contract.

with the investigation you have already conducted of the accident." On November 16, INA's counsel replied, mentioning, *inter alia*, that a release and subrogation were required and that INA "is not bound by the time limit stated in your letter, and that the rights of the parties are governed by the policy provisions." On November 21, appellee's counsel replied, in pertinent part: "At this time I am unable to find any provision in the policy in question or any provision in the law of either the State of Louisiana, the State of Mississippi, or the State of Texas which would give your clients a right of subrogation. *We will, of course, be happy to release Insurance Company of North America from further liability on the policy in question. We will also covenant not to sue the named insured* under the policy * * * "*I am aware that Insurance Company of North America is not bound by any time limit in the policy and there is, of course, no necessity for them to make payment within a 30-day period.*" (Emphasis added).

Counsel for INA by letter November 22 again insisted on the subrogation rights and by letter November 23 appellee's counsel again stated his conviction that subrogation did not apply to Coverage D of the policy, further stating, *"The only document that I could recommend my clients executing* in order to receive payment under this policy is *a limited release and covenant not to sue* in favor of the named insureds under the policy." (Emphasis added). On December 8, appellee's counsel filed suit in state court alleging the sum of $100,000 as due and owing to appellee by INA under the policy. Paragraph 14 of the complaint asked for the 12% penalty damages, together with reasonable attorneys fees should INA fail to pay within 30 days following the original demand of November 12, that is, by December 12.

Upon expiration of the 30-day period, counsel filed a supplemental and amended petition asking for the penalty and on December 21 counsel for appellee by letter asserted that, "I do not anticipate advising my client to accept any offer which is conditioned upon her granting a full release without a *reservation of rights,*" (emphasis added) and warned that if a satisfactory settlement was not forthcoming, there would be insistence on the full amount of penalties and attorneys fees. On December 28, INA made its offer along with the illegal demand for its form of full release, which appellee refused to sign.

█ Thus, several reasons are apparent why appellee is not entitled to the benefits of the Texas statute assessing penalties and attorneys fees. First, appellee's counsel in his letter of November 21 expressly waived the 30-day payment period under the statute. In his supplemental brief, counsel asserts that his statement was merely that INA was not bound by any time limit in the policy and that he was referring to the policy's time limit imposed upon a claimant under the policy to accept or reject an offer by INA within thirty days. It is clear, however, that appellee's counsel said more than that: "There is, of course, no necessity for them [INA] to *make payment* within a *30-day period.*" (Emphasis added.) This statement has nothing to do with the requirement that Mrs. Davis accept or reject an offer from INA, which of course, had not been made at the time of this letter, rather, it plainly refers to the 30-day period under the penalty statute. This is made more certain from counsel's own brief which asserts that the penalty clause under Texas law automatically becomes a condition of each contract of this type of insurance entered into within the state.

█ Finding a waiver of the 30-day period, we also find we need not resolve the question whether INA's failure to make an offer until more than two weeks after this lapse of the 30 days exceeded the outer limits of a "reasonable" time unfavorable to INA, in view of the persistent haggling between opposing counsel and in view of the fact that *both* parties were seeking more than their just due. INA's demanded form of release was clearly too broad but before such demand appellee's counsel had in

three different letters declared and insisted that his client would sign only a *limited* release and *covenant not to sue* and would insist upon a *"reservation of rights."* It is clear from the terms of the policy that INA did not undertake a positive commitment to pay Mrs. Davis but only a commitment if she, on behalf of herself and her children, elected to choose the method of payment under Coverage D *and* fulfilled the *requirement* of the execution of a *full release* against the insured in the manner required by the company. This insistence of appellee's counsel that INA accept a limited release and covenant not to sue with reservation of rights amounts to a sufficient failure on appellee's part to excuse INA from the consequences of the penalty statute on the facts of this case.

In addition, the filing of the suit against INA seeking payment before the lapse of 10-day statutory period would also relieve INA from the burdens of the penalty statute, for such action, *inter alia,* put INA in the position of either paying the sum without obtaining from appellee the proper release to which INA was entitled under the terms of the policy, in order for INA to avoid the harsh penalty, thus involuntarily surrendering its right of defense in the suit instituted by appellee, or INA could refuse payment and let the judicial process be the arbiter but INA would suffer the imposition of the penalty because the 30-day period would lapse while the parties awaited the operations of the judicial machinery. Having instituted the suit and having to that extent transferred the arena from private negotiations to the court, appellee cannot enjoy the benefits of the judicial process while at the time putting appellant INA in the position of being penalized for contesting the issues in that court. Appellee by filing the suit was entitled to the good offices of the court but by filing the suit before the statutory period must be deemed to have waived the penalty claims that might have subsequently ripened.

We, therefore, affirm that part of the district court's judgment that INA's demanded release was an illegal condition precedent to their payment of the sum of $100,000 under the policy and an order directing payment of said sum due and owing was required. In fulfillment of the terms of the policy and in order to effectuate the protection to the insureds as intended by the policy, appellee in return must conform to the requirements of the policy and execute a *proper* full release. We reverse that part of the district court's judgment which imposed the consequences of the Texas penalty statutes.

The judgment below is affirmed in part and reversed in part and remanded for proceedings not inconsistent with this opinion.