## DOODY COMPANY *v.* GREEN, guardian, *et al.*

1. The relationship of uncle and nephew will not support an insurable interest.

2. Where an insurance company issued a policy at the instance of the insured, payable to a named person as nephew of the insured, who was also his ward, and upon the death of the insured voluntarily paid the policy to the nominated beneficiary, neither the creditors nor the administrator of the insured can recover of the beneficiary the excess of the amount collected after discharging the guardian's debt to the beneficiary, on the ground that at the time of the issuance of the policy the insured was indebted as guardian of the beneficiary, and used the ward's money in paying all premiums subsequent to the initial payment.

3. In the administration of an estate, debts due by a deceased person as guardian for the estate committed to him as such rank in priority over debts due on judgments obtained during the lifetime of the deceased.

Submitted May 20,—Decided November 19, 1908.

Petition for direction. Before Judge Rawlings. Emanuel superior court. September 5, 1907.

*Hardeman & Jones,* for plaintiff in error.

*Williams & Bradley,* contra.

EVANS, P. J. W. A. Bird applied for insurance in the American Guild, and his certificate was issued to him on April 28, 1903. Thereafter, on January 28, 1904, he surrendered his original certificate, with a request for a change of beneficiary; and a new certificate was issued to him on that date, with the benefits made payable to Thomas H. Green, his nephew. The premiums of this last contract of insurance were paid out of funds belonging to Thomas H. Green, which the insured at that time had in his hands as guardian of Thomas H. Green. Upon the death of the insured the insurer paid to Charles H. Green, who was the insured's successor as guardian of Thomas H. Green, $1,000, the amount of the policy. Y. E. Bargeron, as administrator of Bird, filed a petition to marshal the assets of the estate, and for direction. The W. A. Doody Company, a judgment creditor, and Charles H. Green, guardian of Thomas H. Green, filed answers. The case was submitted to the judge upon an agreed statement of facts, to be decided by him without a jury. In addition to the foregoing recitals of fact, it was agreed, that the debt due Thomas H. Green by W. A. Bird as guardian was the amount represented by his last return as such guardian, which was less than $1,000; that W. A. Doody Company's

debt was represented by a judgment against W. A. Bird; that the debts of the other creditors of W. A. Bird were upon open accounts; and that the assets in the hands of the administrator of Bird were insufficient to pay off all the creditors. The court adjudged, that the administrator, after paying the expenses of the administration, should first pay the amount due to Charles H. Green, as guardian of Thomas Green; that next in order he should pay the judgment of the Doody Company; and if any money remained, it should be distributed among the account creditors. Doody Company excepts to this judgment, alleging it to be erroneous, (1) because Thomas H. Green had no insurable interest by reason of relationship in the policy of life insurance in which he was named as beneficiary, but had an insurable interest as creditor of his guardian, and the law would presume that the insured named, as beneficiary, a person having an insurable interest, and that the policy was a security for debt, and when the debt was paid the security was released, and can not be insisted on to the prejudice of the other creditors of the insured; (2) because the court should have decreed that Thomas H. Green, and Charles H. Green, his guardian, must pay back into the estate of the insured the overplus after having paid the debt due Thomas H. Green; and (3) because the claim of Doody Company was a claim against the estate of W. A. Bird, prior in dignity to the amount which W. A. Bird, as guardian of Thomas H. Green, was due his ward.

1. It is conceded that, according to the almost unbroken current of authority, the relationship of uncle and nephew will not support an insurable interest. 1 Cooley's Briefs on Ins. 290; 3 Am. & Eng. Enc. L. (2d ed.) 941, and cases there collated.

2. But the proceeds of the policy of insurance were no part of the estate of W. A. Bird. When the second certificate of insurance was issued, the contract of the insurer was to pay to the nephew, and not the administrator of the insured. No copy of the policy of insurance appears in the record, but it is stated in the agreed statement of facts that its benefits were payable to Thomas H. Green, the nephew of the insured. We may well assume from this admission that the insurable interest of the beneficiary as stated in the policy was the relationship of nephew. Although a nephew may have had no insurable interest in the life of his uncle, the insurance company has seen fit to recognize the beneficiary as

having an insurable interest in the life of the insured, and to pay the proceeds of the policy to the nominated beneficiary. The plaintiff in error argues, that while there was no understanding between the insured and the beneficiary, the policy should be held as security for debt, and that inasmuch as the beneficiary had no insurable interest on account of relationship, but did have an insurable interest as a creditor, the law will presume a legal, rather than an illegal transaction, and the policy will be deemed to have been issued to the beneficiary as a creditor. We do not think any such presumption arises, but rather that the policy was paid according to its terms. The insurance company recognized its liability to the beneficiary as the nephew of the insured, and voluntarily paid the amount of the policy to the beneficiary, and other parties have no interest in the matter. Hosmer *v.* Welch, 107 Mich. 470 (65 N. W. 280, 67 N. W. 504) ; Johnson *v.* Van Epps, 110 Ill. 551; Meyers *v.* Schuman, 54 N. J. Eq. 414 (34 Atl. 1066) ; 1 Cooley's Briefs on Ins. 320.

There is nothing ruled in the case of *Exchange Bank* v. *Loh,* 104 *Ga.* 446 (31 S. E. 459, 44 L. R. A. 372), which militates with this view. In that case Hudgins took out a policy of insurance on his life, payable to himself, and assigned the same to the bank to secure a debt. The policy was collected by the bank, and the court held that Hudgins' administrator was entitled to recover of the bank the surplus of the money collected by it after paying the indebtedness of Hudgins to the bank. That case turned on the point that the policy was payable to the administrator of the insured, and that when the policy was assigned to the bank to secure a debt, the bank was not entitled to withhold from the administrator of the insured the surplus after getting the money for which the policy was hypothecated.

There is still another reason why the proceeds of the policy are no part of the estate of the insured. The policy was issued at the instance and by the procurement of the insured. The beneficiary took no part in the transaction. An applicant for life insurance, acting in good faith, may legally designate as the beneficiary in the certificate of insurance one who has no insurable interest in the life of the insured, provided there be at the time the certificate is issued no restriction in the policy, or the charter or by-laws of the company, or in the statutes of the State, forbidding the right to

appoint such a beneficiary. *Ancient Order United Workmen* v. *Brown*, 112 *Ga.* 545 (37 S. E. 890); *Rylander* v. *Allen*, 125 *Ga.* 206 (53 S. E. 1032, 6 L. R. A. (N. S.) 128). This subject is fully discussed and many authorities examined in these cases. The beneficiary here was a minor; he was closely related to the insured; there is nothing in the agreed statement of facts to indicate that the insured intended a wagering contract. The mere fact that the guardian used his ward's money to pay subsequent premiums does not show any participation of the ward in procuring or keeping up the insurance. In the *Brown* case, supra, Lumpkin, P. J., in his dissenting opinion, regarded the payment of premiums by a beneficiary, who had no insurable interest, as determining the character of the policy as a wagering contract. The unauthorized use of a ward's funds by a guardian in paying the premiums upon a policy taken out by the guardian on his life for the benefit of his ward is not a payment of the premiums by the ward.

3. The Civil Code, §3424, in express terms declares that debts due by a deceased person as guardian for the estate committed to him as such shall rank in priority over debts due on judgments obtained during the lifetime of the deceased.

*Judgment affirmed. All the Justices concur.*